JEFFREY K. GARFINKLE (SBN: 153496)
CAROLINE R. DJANG (SBN: 216313)
BUCHALTER, a Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Email: jgarfinkle@buchalter.com
          cdjang@buchalter.com

Attorneys for Classic Refrigeration Socal, Inc.,
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>CLASSIC REFRIGERATION SOCAL, INC.,<br><br>                      Debtor. | Case No. 8:22-bk-11239-TA<br><br>Chapter 11<br>(Subchapter V)<br><br>**REVISED SUBCHAPTER V PLAN OF REORGANIZATION DATED MARCH 22, 2023**<br><br>**Plan Confirmation Hearing (Un-Person):**<br><br>Date:      February 16, 2023<br>Time:      2:00 p.m.<br>Place:     Courtroom 5B<br>            411 West Fourth Street<br>            Santa Ana, CA 92701-4593<br><br>**Movant Intends to Appear in Person** |

/ / /

/ / /

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

Classic Refrigeration SoCal, Inc., debtor and debtor in possession (the "Debtor") submits this Revised Subchapter V Plan of Reorganization dated March 22, 2023 (the "Plan").

GENERAL DISCLAIMERS

THIS DOCUMENT AND THE ATTACHED PLAN EXHIBITS SHOULD BE READ CAREFULLY. THEY EXPLAIN THE TREATMENT THAT CREDITORS AND INTEREST HOLDERS CAN EXPECT TO RECEIVE UNDER THE PLAN, IF THE PLAN IS CONFIRMED BY THE COURT.

THE DEBTOR'S FINANCIAL STATEMENTS, PROJECTIONS AND OTHER FINANCIAL DATA RELIED ON TO FORMULATE THIS PLAN ARE IN THE PLAN EXHIBITS. THE DEBTOR HAS ALSO UNDERTAKEN EFFORTS TO CONFIRM THAT EACH OF THE ASSUMPTIONS UNDERPINNING THE PROJECTIONS IS REASONABLE AND SUPPORTED BY RELIABLE ECONOMIC DATA. THE DEBTOR HAS UNDERTAKEN REASONABLE EFFORTS TO ASCERTAIN THAT EACH OF THE STATEMENTS MADE IN THE PLAN EXHIBITS IS TRUE AND CORRECT IN EVERY MATERIAL RESPECT, BUT NO ASSURANCE CAN BE GIVEN THAT THE STATEMENTS ARE WITHOUT ERROR.

UNLESS THE COURT ORDERS OTHERWISE, NO STATEMENTS ARE AUTHORIZED CONCERNING THE DEBTOR OR THE PLAN THAT ARE NOT CONSISTENT WITH INFORMATION CONTAINED IN THE PLAN.

I.    Definitions and Rules of Construction.

a.    The Plan incorporates by reference (i) the definitions set forth in sections 101, 1182 and 1191(d), and (ii) the rules of construction set forth in sections 102 and 1191(c).

b.    In addition, the words and phrases in the attached Exhibit I.b. have the meanings set forth in that exhibit.

c.    Unless expressly stated to the contrary, all references to a "section" shall mean a section of the Bankruptcy Code.

d.    All defined words and phrases, whether defined in the Plan or incorporated by reference, are initial capped in the Plan.

II.    Brief History of the Business Operations of the Debtor.[1]

The Debtor is in the business of designing, constructing, equipping, servicing and maintaining large cold storage units throughout Southern California, from Bakersfield to Mexico and from Palm Springs to the Pacific Ocean. The Debtor's customers include large supermarket chains and pharmaceutical companies. The Debtor has approximately a dozen "service performance" agreements with its customers, each of which sets forth the specific performance criteria for the services expected from the Debtor. Those agreements govern service obligations related to approximately 900 locations throughout Southern California.

The Debtor leases a headquarters office, which is located in Fullerton, CA. In order to meet the service requirements of its customers, however, only a few of the employees work at that location, and those are involved primarily in the engineering and design aspects of the Debtor's business. Instead, most of the Debtor's 101 employees are distributed throughout Southern

---

[1]  For more detailed information, see the First Day Declaration.

California so they are available to respond promptly to any service request. Substantially all of the Debtor's employees are members of one of several applicable unions.

Substantially all of the Debtor's service contracts with its customers require the Debtor to respond, be on-site, and initiate repairs within two hours of a service request, 24 hours a day, 7 days a week, 365 days a year. Typically, a customer will call or email the Debtor upon discovery of a malfunction in a refrigeration unit, and within two hours, the Debtor's employee is to be on-site working to resolve the problem.

The Debtor operates approximately 68 owned (or leased) service vehicles used by its employees to respond and resolve any issues related to the operation of a customer's refrigeration unit. The average life expectancy of those vehicles are four years or 120,000 miles. Other than the vehicles and the office equipment in the Fullerton office location, substantially all of the Debtor's assets consist of tools, equipment and supplies maintained in the service vehicles to be available when the need arises.

As of October 31, 2022, the Debtor had roughly $4.47 million in accounts receivable, substantially all of which are under 30 days and other personal property assets, such as equipment and supplies, service vehicles. The Debtor has two groups of Creditors that hold consensual Security Interests in the Debtor's assets: (i) the US Small Business Administration, owed approximately $150,000 with a blanket Security Interest on substantially all of the Debtor's personal property assets; and (ii) a number of vehicle lenders secured with a Security Interest in specific vehicles financed or subject to financing leases.

On July 18, 2022, after a jury trial in the District Court Action, a judgment was entered in favor of Hill Phoenix, Inc. and against (a) the Debtor and one of its officers on a claim under the California Uniform Trade Secrets Act, and (b) two of its officers on claims for breach of contract and fiduciary duty. The jury awarded Hill Phoenix zero damages on the breach of contract and fiduciary duty claims, and $2.875 million against the Debtor. The Debtor appealed the judgment to the Ninth Circuit. Hill Phoenix asserts a lien on certain of the Debtor's assets as a result of the Judgment Lien. This Bankruptcy Case was commenced five days after the Judgment Lien was recorded in order to preserve the value of the Debtor's business pending appeal and protect the interests of all stakeholders.

This Plan is a consensual plan. As set forth on the record at the hearing on confirmation of the Plan on February 16, 2023, Hill Phoenix consents to the treatment accorded it under the Plan as modified in this revision.

III.    Assets and Liabilities; Liquidation Analysis; Cash Flow Projections

a.    To confirm the Plan, the Court must find that all Creditors and Holders of Equity Securities who do not accept the Plan will receive at least as much under the Plan as such Creditors and Holders of Equity Securities would receive in a chapter 7 liquidation. Attached as Exhibit III.a is a copy of the Debtor's liquidation analysis as of March 3, 2023, with a projected valuation date of April 1, 2023.

b.    Pursuant to section 1191(c)(3), the Debtor must also show that the Debtor will be able to make all the Plan Payments, or there is a reasonable likelihood that the Debtor will have enough Cash over the three-year life of the Plan to make the Plan Payments and to operate the Debtor's business.

c.    Attached as Exhibit III.c is a copy of the Debtor's Projections. The Projections show that the Debtor reasonably expects that over the next 36 months, beginning on the date that the first payment is due under the Plan, the Debtor will have projected Disposable Income of approximately $1,443,300. The Projections also show that the projected Disposable Income is not reasonably

**REVISED SUBCHAPTER V PLAN OF REORGANIZATION DATED MARCH 22, 2023**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

necessary for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.  In other words, the Projections provide support for the Debtor's determination that the Plan is feasible and that the funds necessary to make the Plan Payments required under the Plan will be available.  It should be noted that as a result of a negotiated resolution between Hill Phoenix and the Debtor, for the first year after the Effective Date, the Projections do not provide for payment of incentive-based compensation to the three senior executives pursuant to the EIP.  After that first year, all employees qualified to participate in the EIP, including the three senior executives, shall be eligible for such incentive-based compensation pursuant to the EIP.

IV.    Summary of the Plan.

a.    The Plan provides for quarterly payments to Creditors from the projected Disposable Income generated from the Debtor's business operations and other sources.  The Plan Payments are expected to begin on the Payment Commencement Date.  The Plan Payments will continue until the Termination Date.

b.    As set forth in section 1123(a)(1), not all Claims are classified.  The Plan provides for one class of Equity Security Interests, and the following Classes of Creditor Claims:

1 class of Priority Claims;
1 class (comprised of 2 subclasses) of Secured Claims;
2 classes of non-Priority Unsecured Claims;
1 class of Insider Unsecured Claims; and
1 class of Equity Security Interests

c.    *Assumption of Executory Contracts and Unexpired Leases*.  On the Effective Date, each Executory Contract and Unexpired Lease in which the Debtor is a party, except only those related to the Litigation Claim, will be assumed by the Debtor.  Without limiting the foregoing, the Debtor is assuming, for example, all service agreements with its customers and each agreement with any Critical Vendor.  In addition, the Debtor shall assume each unexpired lease of a vehicle or any other equipment.

Under section 365(b), assumption will require the Debtor to (i) cure any default, and (ii) provide adequate assurance of future performance to each non-Debtor party to each Executory Contract and Unexpired Lease to be assumed.  The Debtor believes that making that "cure and assure" showing will provide the affected Creditors with the assurance not just that the Debtor will perform under the assumed Executory Contract and Unexpired Lease, but also that the Debtor will be able to perform its obligations under the Plan.

V.    Unclassified Claims and Provision for Payment.

a.    Unclassified Claims.  Under section 1123(a)(1), Claims for Administrative Expenses and Priority Tax Claims are not classified.

b.    Administrative Expenses.    Each Holder of an Administrative Expense Claim Allowed under section 503 will be paid Cash in full on the Effective Date of the Plan, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor.  The Debtor estimates that the total of Administrative Expense Claims will approximate $750,000.

c.    Priority Tax Claims.   Each Holder of a Priority Tax Claim will be paid as follows:

(i)    Holders of Claims of a kind specified in sections 507(a)(1)-(7) shall receive Cash equal to the Allowed amount of the Claim on the Effective Date.

(ii)  Holders of Claims of a kind specified in section 507(a)(8) shall, on the Effective Date, receive on account of such Claim, regular installment payments in Cash (A) of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, (B) over a period of time not later than 5 years after the Petition Date, and (C) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than the Class of Convenience Claims).

(iii)  The Debtor estimates that the total of Priority Tax Claims will approximate $300,000.

VI.    Classification and Treatment of Claims and Equity Interests.

a.    Class 1.  *Priority Claims*.  Any Claim that is entitled to priority in payment under section 507(a) that is not (i) an Administrative Expense Claim or (ii) a Priority Tax Claim. As of the date of the filing of the Plan, no Class 1 Priority Claims have been filed or scheduled. Under the Plan, Priority Claims in Class 1 are not impaired.  Each Holder of an Allowed Priority Claim will be receive payment in full in Cash on the Effective Date.

b.    Class 2.  *Secured Claims*.  Any Claim the obligations of which are secured with a Security Interest or Lien in Collateral Property, but only to the value of that Security Interest or Lien.  Under the Plan, the Holders of Allowed Claims in subclasses 2a and 2b in Class 2 are not impaired.

There are two subclasses of Class 2 Secured Claims:

(i)  *Subclass 2a (the SBA) –Unimpaired*.  The U.S. Small Business Administration (the "SBA"), which holds a first priority security interest in substantially all of the Debtor's personal property as Collateral Property to secure repayment of approximately $150,000.  The SBA will continue to be paid pursuant to its prepetition loan terms with the Debtor, *i.e.* pursuant to the loan documents that were attached to the SBA's Proof of Claim, filed on July 26, 2022 as Claim No. 1.

(ii)  *Subclass 2b (Vehicle Liens) –Unimpaired*.  Each Creditor whose obligations from the Debtor are secured with a vehicle or equipment financed by the Creditor.  There are approximately 68 separate vehicle loans or finance leases and one equipment financing (for a forklift).

*Treatment of Claims in Subclasses 2a and 2b*.      Each Security Interest held for the benefit of a Holder of an Allowed Secured Claim in Subclasses 2a or 2b shall remain unimpaired and unaffected by the Bankruptcy Case.  During the pendency of the Bankruptcy Case, and in the nature of adequate protection, the Debtor has continued to make payments to each Holder of a Secured Claim in accordance with the terms of the agreements evidencing the Claims.

On and after the Payment Commencement Date, the Debtor shall continue to make payments in accordance with the terms of the agreements and leases evidencing the Claims.  As a result, each such Holder shall receive deferred Cash payments totaling at least the value of the Allowed amount of the Claim, of a value, as of the Effective Date, of at least the value of the Holder's Security Interest in the Estate's interest in the Collateral Property.

c.    Class 3.  *Convenience Claims (Impaired and Entitled to Vote)*.    Any Unsecured Claim in the amount of $5,000 or less, and any Unsecured Claim that has been reduced to $5,000 by the election of the Holder thereof.  On the Effective Date, Holders of Allowed Convenience Claims shall receive Cash equal to 90% of such Holder's Allowed Claim.  The Debtor

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

4

estimates that total of Class 3 Convenience Claims will approximate $5,000.

        d.      Class 4. *General Unsecured Claims (Impaired and Entitled to Vote)*. Any Claim (including the Litigation Claim) that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim, a Secured Claim, a Convenience Claim, an Insider Unsecured Claim or an Indemnification Claim. This class also includes any Claim that may arise as a result of rejection of any Executory Contract or Unexpired Lease. After payment to certain Critical Vendors, it is projected that the total of Allowed Unsecured Claims will approximate $3,314,082, including the Litigation Claim.[2]

        Beginning on the Payment Commencement Date and continuing thereafter on each Required Payment Date, the Debtor will pay to each Holder of a General Unsecured Claim its *pro rata* share of the projected Disposable Income. The Projected Disposable Income to be paid quarterly is supported by the Debtor's Projections.

        As to the Litigation Claim, which is the subject of a pending appeal before the Ninth Circuit Court of Appeals, the Litigation Claim is Disputed until Resolution of the Litigation Claim.

        No Plan Payment allocated to the Litigation Claim shall be provided to the Holder of the Litigation Claim until the Litigation Claim is Allowed, and only to the extent the Litigation Claim is Allowed. Once the Litigation Claim is Allowed, the Holder of the Litigation Claim shall be paid from the funds in the Reserve for Disputed Claims allocable to the Litigation Claim and from any future *pro rata* quarterly distributions on each Required Payment Date.

        e.      Class 5. *Insider Unsecured Claims (Impaired and Entitled to Vote)*. The Claims of (i) Profit Partners, LLC; (ii) 401 (K), LLC, and (iii) David Rogers, each based on their (a) pre-petition loans to the Debtor and (b) indemnification Claims for any portion of the monetary judgment and bill of cost entered in the Hill Phoenix litigation and paid (if any). As of the Petition Date, the Class 6 Claims total $2,248,593.56.

        On the Effective Date, the Insider Unsecured Claims will be converted into Preferred Stock and distributed to the Holders of the Insider Unsecured Claims on a *pro rata* basis. The Preferred Stock will have a priority right to receive cumulative dividends at an annual rate of eight percent (8%), commencing on the Effective Date, provided, however, no dividends may be paid to the Holders of Preferred Stock, and no shares of Preferred Stock may be redeemed until all Creditor Obligations have been paid in full.

        f.      Class 6. *Equity Security Interests*. Holders of Allowed Equity Securities comprised of the 9 individual shareholders. Except as expressly provided in the Plan [and the Plan Supplement documents,] the rights of the Holders of Equity Security Interests shall not be impaired. Until all Creditor Obligations have been funded, no dividends or distributions may be made to the Holders of Equity Security Interests.

    VII.    Implementation of the Plan.

    *a.*    *Payments on the Effective Date*. The Debtor shall make the Plan Payments and all other payments contemplated under the Plan. It is estimated that under the Plan, the Debtor will be required to pay approximately $25,000 on the Effective Date. Based on the Projections, the Debtor

---

[2] This amount may increase by virtue of a possible claim by Ms. Walsh against the Debtor and certain of its officers, directors and employees. On September 21, 2022, post-bankruptcy and without obtaining relief from the automatic stay, Ms. Walsh filed a lawsuit against the Debtor and certain of its officers, directors and employees in an unspecified amount. While this lawsuit is stayed, the Debtor anticipates that Ms. Walsh will assert a general unsecured claim against the estate. As of the date of the filing of this Plan, Ms Walsh has not filed a proof of claim.

expects that it will have Cash sufficient to make the Plan Payments required to be made on the Effective Date. If the Court confirms the Plan pursuant to section 1191(b), Administrative Expense Claims shall be paid through the Plan from projected Disposable Income in accordance with section 1191(e). Administrative Expense Claims shall be paid in full before payment to any Class 4 claims.

      *b.*     *Required Plan Payments During the Plan Term*. Under section 1191(c), in order for a plan to be "fair and equitable," the plan must provide that all of the projected Disposable Income of the debtor to be received in the 3-year period will be applied to make payments under the plan.

      Under the Plan, the Debtor will make the Plan Payments, as set forth in the Disposable Income Projections, on a quarterly basis to Creditors. Based on the Projections, the Debtor expects that it will have Cash sufficient to make each of the Plan Payments required to be made on each of the Required Payment Dates. The Debtor is permitted to prefund any required Plan Payment.

      *c.*     *Source of Funds to Make the Plan Payments*. Since its formation, the Debtor has demonstrated the ability to generate positive cash flow and Disposable Income. As it has since formation, the Debtor shall continue to perform under each assumed contract after the Confirmation Date. As part of the Plan, the Debtor will retain all or substantially all of the Property of the Estate, continue to operate its business and generate Disposable Income. Over the Plan Term, the Debtor will use the Disposable Income to fund the Plan Payments.

      *d.*     *Information to the Subchapter V Trustee.* As of the Effective Date, the Subchapter V Trustee shall not receive any further operating or other information from the Debtor.

      *e.*     *Assumption of Certain Executory Contracts and Unexpired Leases*. As part of the confirmation of the Plan, the Debtor shall assume a number of Executory Contracts and Unexpired Leases to the extent such assumption has not been effectuated during the pendency of the Bankruptcy Case. As a precaution, the Plan expressly excludes from assumption any Executory Contract and Unexpired Lease related to the Litigation Claim. Except as expressly set forth above, or in a pleading filed by the Debtor on or before the hearing on confirmation of the Plan, all of the Executory Contracts and Unexpired Leases will be assumed under section 365. That code section requires, with respect to each contract and lease, that the Debtor "cure and assure" the non-Debtor party to such Executory Contract and Unexpired Lease as more specifically set forth under section 365(b). Evidence of the satisfactory compliance with such requirements shall be provided as part of the confirmation process.

      *f.*     *Risk Factors*. As with any business plan reliant in part upon the internal generation of funds from operations, there are substantial risks associated with the Debtor's ability to generate funds sufficient to generate the Disposable Income needed to fund the Plan Payments.

      *g.*     *Payment Deferral Election*. If, as a result of unforeseen market circumstances, extraordinary operating issues, or any other event or circumstance, the Debtor in good faith determines that it does not have Disposable Income sufficient to both (i) pay expenditures necessary for the continuation, preservation, or operation of the business of the Debtor and (ii) make a scheduled Plan Payment, then the Debtor may elect to defer a Plan Payment for one or two quarters. The Debtor may make a Payment Deferral Election no more frequently than once every calendar year.

      *h.*     *Contemplated Litigation*. The Debtor expressly reserves all of its rights and remedies, but does not contemplate commencing any post-petition litigation at the present time. The Debtor reserves the right to object to any Claim asserted against the estate.

      *i.*     *Litigation Claim*. On and after the Effective Date, the Reorganized Debtor and Hill Phoenix are permitted to prosecute the appeal before the Ninth Circuit Court of Appeals. If the Hill Phoenix judgment is reversed and remanded for a new trial, the United States District Court

for the Central District of California will retain jurisdiction to resolve the underlying litigation between the Debtor and Hill Phoenix and the amount of any Litigation Claim, if any, as against the Debtor. Notwithstanding such jurisdiction, the treatment of the Litigation Claim remains subject to the provisions of this Plan.

   *j.*     *Vehicle Replacement Program*. On and after the Effective Date, in the ordinary course of its business and without Court permission or further authorization, the Reorganized Debtor is permitted to (i) dispose of any of current fleet of vehicles; (ii) acquire new or replacement vehicles; (iii) enter into leasing or financing arrangements with respect such vehicle acquisitions, and (iv) use the proceeds from disposition of any vehicle to fund (x) the acquisition of new vehicles, (y) its day-to-day business operations, or (z) the Plan Payments.

   *k.*     *Issuance of Channeling Injunction with respect to Certain Claims against the Debtor's Officers, Directors, and Employees; Acknowledgment of Employee Indemnification Claims*. On the Effective Date, entry of the Confirmation Order shall impose the Channeling Injunction against each of the Channeled Claimants as follows:

   (i)     As to each of the Ghassemian Claimants, the Channeling Injunction relates to any claim against any of the Debtor's officers, directors and employees, including David Lowe, Danny Lamping and Dave Rogers, on account of any Claim against the Debtor related to the Hill Phoenix litigation for legal services provided before the Petition Date which is not governed by the Retention Agreement dated June 27, 2022 between Ghassemian Law Group, on the one hand, and the Debtor, David Lowe, Danny Lamping, and David Rogers, on the other hand.

   (ii)    As to Ms. Walsh, the Channeling Injunction relates to any claim against any of the Debtor's officers, directors or employees, including David Lowe, Danny Lamping, Dave Rogers, and Scott Kinman, on account of any Claim against the Debtor which was, or could have been asserted in the certain lawsuit filed on or about September 21, 2022 by Ms. Walsh in the Superior Court of California, for the County of Orange, Case No. T22-5337.

   VIII.   Allowance and Disallowance of Claims.

   a.      *Allowed Claims*. On the Effective Date and on each Required Payment Date, the Debtor shall make Plan Payments to Holders of Allowed Claims or to the Reserve for Disputed Claims.

   b.      *Objections to Disputed Claims*. On and after the Effective Date, the Reorganized Debtor may interpose an objection to any Claim.

   c.      *Reserve for Disputed Claims*. No Plan Payments will be made to Holders of Disputed Claims on account of such Claims. Plan Payments otherwise allocable to Holders of Disputed Claims shall be retained by the Reorganized Debtor as Disbursing Agent in the Reserve for Disputed Claims. On the Effective Date and on each Required Payment Date, the Reorganized Debtor shall deposit Cash into the Reserve for Disputed Claims in an amount equal to the distribution reserved for the Holders of Disputed Claims. The Cash in the Reserve for Disputed Claims shall be held in trust, for the sole benefit of holders of Disputed Claims, in a segregated interest-bearing demand deposit account with a Financial Institution approved by the Office of the United States Trustee for the benefit of Holders of such Disputed Claims pending determination of the entitlement thereto. Specifically with respect to the Litigation Claim, until the Litigation Claim becomes an Allowed Claim. Plan Payments on account of the Litigation Claim shall be made to the Reserve for Disputed Claims based upon the Judgment Amount. All other Plan Payments on

account of Disputed Claims shall be made into the Reserve for Disputed Claims based upon the amount of each Disputed Claim as reflected on the claims as filed by the Holders of such Disputed Claims.

d.     *Distribution from the Reserve for Disputed Claims*.  Cash held in the Reserve for Disputed Claims allocated to a Disputed Claim shall be distributed by the Disbursing Agent to the Holder of such Disputed Claim when and to the extent that such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  To the extent that such a Disputed Claim is determined to be an Allowed Claim in an amount less than the amount of the Disputed Claim, the resulting surplus shall be held in the Reserve for Disputed Claims for *pro rata* distribution to Allowed Claims.

e.     *Disbursing Agent*.  As this Plan is a consensual plan, confirmed pursuant to section 1191(a), the Reorganized Debtor will act as the Disbursing Agent under the Plan.  The Reorganized Debtor shall be entitled to pay the fees and expenses incurred by the Disbursing Agent in the ordinary course of the Reorganized Debtor's business without any further order of the Bankruptcy Court.

IX.     Effect of Confirmation.  As provided in section 1141, confirmation of the Plan shall result in the following:

a.     *Termination of the Services of the Subchapter V Trustee*.  Pursuant to section 1183(c)(1), the Subchapter V Trustee's services are terminated on the Effective Date, when the substantial consummation of this Plan has occurred,

b.     *Binding Effect*.  As set forth in section 1141(a), upon entry of the Confirmation Order, the provisions of the Plan bind the Debtor, each Creditor and each Holder of Equity Security Interests that is impaired under the Plan.  The rights and obligations of any Entity governed by the Plan will be binding upon, and inure to the benefit of, the successors or assigns of such Entity.

c.     *Revesting Property of the Reorganized Debtor*.  Except as provided elsewhere in the Plan or the Confirmation Order, on the Effective Date, each of the following shall occur:  (i) all of the property of the estate is to be revested in the Reorganized Debtor;(ii) all of the claims against and interests in third parties that constitute property of the estate is to be revested in the Reorganized Debtor; (iii) the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Bankruptcy Court; and (iv) the Reorganized Debtor shall have the authority to employ such professionals as it deems necessary to prosecute or defend such claims asserted without the need for Bankruptcy Court approval.

Notwithstanding the foregoing, for the first 12 months after the Effective Date, the three senior executives of the Reorganized Debtor shall forego any bonus payments allocable under pursuant to the EIP or otherwise.  Thereafter, all employees of the Reorganized Debtor are eligible to participate in the EIP.

Following confirmation under section 1191(b), property of the estate shall include the property specified in section 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the Petition Date but before the first to occur of:  (a) the Termination Date; (b) entry of an Order dismissing the Bankruptcy Case, (c) entry of an Order converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.  Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the estate, as that term is described in section 541(a) of the Bankruptcy Code.

d.     *Free and Clear; Judgment Lien Avoided*.  As set forth in section 1141(c), except as

provided in the Plan or in the Confirmation Order, after the Effective Date, the property dealt with by the Plan is free and clear of all Claims and interests of Creditors.  Any Lien evidenced by the Judgment Lien shall be avoided and preserved for the benefit of the Debtor, as provided in the Order entered in the Adversary Proceeding.

e.    *Discharge*.  Under section 1192, as soon as practicable after the Termination Date, and completion by the Debtor of all payments due within the first 3 years of the Plan, the Bankruptcy Court shall grant the Debtor a discharge of all (i) debts of a kind specified in sections 502(g), 502(h), or 502(i), and (ii) all other debts Allowed under section 503, except any debt (a) on which the last payment is due after the first 3 years of the Plan, (b) of the kind specified in section 523(a).

i.    Except as expressly set forth in the Plan, the rights afforded in the Plan and the treatment of all Creditors shall be in exchange for and in complete satisfaction, discharge, and release of Claims of any nature whatsoever, Including any interest accrued thereon from and after the Petition Date, against the Debtor and the Debtor in Possession, and against any of their assets or properties.

ii.    Except as otherwise expressly provided in the Plan, on the Effective Date, all such Claims against the Debtor shall be satisfied, discharged, and released in full.  All Entities shall be precluded from asserting against the Debtor, its successors, or its assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Petition Date.

X.    Events of Default.  In this Plan, the occurrence and continuation of any of the following shall be an "Event of Default:"

i.    The Debtor shall fail to make any payment required under the Plan when due, Including any Plan Payment; and

ii.    The Debtor shall fail to perform or observe any term or condition contained in the Plan which failure remains unremedied for 30 days after written notice has been given to the Debtor by any party in interest.

Upon the occurrence and continuation of an Event of Default, then any party in interest may seek an Order from the Bankruptcy Court after notice and a hearing determining that an Event of Default has occurred and is continuing, and the Bankruptcy Court may grant such relief as it deems just and proper.  If the Event of Default is a default in payment to Holders of Claims under Class 4, such relief sought by such Holders and in exercising its determination of the best interest of creditors and the estate, the Court may include conversion of the Case to chapter 7 and authorization of the chapter 7 trustee to operate the Debtor's business in order to effectuate a sale of assets as a going concern.

XI.    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction for only the following limited purposes:

a.    To hear and determine any objections to Administrative Expense Claims or to Claims filed, and to allow or disallow any Administrative Expense Claims or to Claims that are subject to dispute in whole or in part;

b.    To hear and determine all applications for compensation and reimbursement of expenses under sections 330 and 331;

c.    To enter such Orders as may be contemplated by the Confirmation Order;

1

        d.      To hear and determine any issues associated with any alleged Event of

2 Default under the terms of the Plan; and

3         e.      To enter a final decree closing the Bankruptcy Case.

4

    **XII.**   <u>Miscellaneous Provisions.</u>

5

    a.    *Modification of the Plan.* As set forth in section 1193, the Debtor has the following

6 rights to modify the Plan: (i) at any time before the Confirmation Date under the terms and
conditions set forth in section 1193(a); (ii) at any time after the Confirmation Date, but before

7 substantial consummation of the plan under the terms and conditions set forth in section 1193(b);
and (iii) at any time within 3 years, as fixed by the Bankruptcy Court, under the terms and

8 conditions set forth in section 1193(c).

9     b.    *Unclaimed or Undeliverable Plan Distributions; Minimum Distributions.* Any
distribution of property (Cash or otherwise) under the Plan which is unclaimed after 90 days

10 following the date of distribution shall revert to the Debtor. Any periodic distribution of Cash
under the Plan that is less than $10.00 shall be deemed undeliverable and shall revert to the Debtor.

11

12     c.    *Severability.* Wherever possible, each provision of the Plan shall be interpreted in
such manner as to be effective and valid under applicable law, but if any Order determines any

13 provision of the Plan shall be prohibited by or invalid under applicable law, such provision shall be
ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such

14 provision or the remaining provisions of the Plan.

15     d.    *Captions.* The headings contained in the Plan are for convenience of reference only
and do not affect the meaning or interpretation of this Plan.

16     e.    *Controlling Law.* The laws of the United States and State of California govern the
Plan and any agreements, documents, and instruments executed in connection with the Plan, except

17 as expressly provided in the Plan.

18 Dated: March 21, 2023              CLASSIC REFRIGERATION SOCAL, INC.

19

20                                By: _____

21                                    DAVID M. ROGERS

22

23

24

25

26

27

28

1    On behalf of Classic Refrigeration SoCal Inc., Debtor and Debtor in Possession, the

2  undersigned submits this Revised Subchapter V Plan of Reorganization dated March 22, 2023.

3  DATED:  March 22, 2023                    BUCHALTER

4

5                                                    By:    /s/ *Caroline R. Djang*

6                                                          JEFFREY K. GARFINKLE
                                                         CAROLINE R. DJANG
7                                                    Attorneys for CLASSIC REFRIGERATION
                                                         SOCAL, INC.
8                                                    Debtor and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit I.b
Additional Definitions and Rules of Construction

In addition to the definitions set forth in sections 101 and 1191(d) and the Rules of Construction in sections 102 and 1191(c), the Plan incorporates the following definitions.

*Administrative Expense*:  Any Claim constituting a cost or expense of administration of the Bankruptcy Case Allowed under section 503(b).

*Adversary Proceeding*:  The adversary proceeding assigned Adv. No. 8:22-ap-01068-TA commenced by the Debtor on August 1, 2022 naming Hill Phoenix as a defendant and seeking, among other things, a judgment avoiding and recovering as a preferential transfer under sections 547(b) and 550 of the Bankruptcy Code, the recordation of the Judgment Lien.  The parties shall stipulate to a judgment in the Adversary Proceeding determining that the Judgment Lien is avoided and preserved for the benefit of the Debtor.

*Allowed Claim*:  (a) Any Claim or Interest, proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or (ii) as to which an objection has been interposed, to the extent such Claim has been Allowed in whole or in part by Final Order; or (b) if no proof of claim was so filed, any Claim or Interest which has been listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent and which is not a Disputed Claim.

*Bankruptcy Case*:  The case in the Bankruptcy Court under chapter 11, subdivision V of the Bankruptcy Code in which Classic Refrigeration SoCal, Inc. is the Debtor and Debtor in Possession, case no. 8:22-bk-11239-TA in the Bankruptcy Court.

*Bankruptcy Code*:  The Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Bankruptcy Case.

*Bankruptcy Court*:  The United States Bankruptcy Court for the Central District of California having jurisdiction over the Bankruptcy Case.

*Bankruptcy Rules*:  The Rules of Bankruptcy Procedure, as amended, as applicable to the Bankruptcy Case, Including the Local Bankruptcy Rules of the Bankruptcy Court.

*Business Day*:  Any day on which commercial banks are open for business in Santa Ana, California.

*Cash*:  United States Dollars.

*Channeled Claimants*:  Each of the Holders of Channeled Claims.  It is believed that the following Entities, together with any successors and assigns, each assert Claims that may be construed, to some extent, as a Channeled Claim:  (a) Erin Walsh ("Ms.

Walsh"); and (b) the Ghassemian Claimants.

*Channeled Claims*:  Each Claim held by an Entity asserted against one or more of the Debtor's officers, directors or employees, including Scott Kinman, Daniel Lamping, David Lowe and David Rogers, each of whom hold indemnification claims against the Debtor.

*Channeling Injunction*:  The injunction on terms more particularly set forth in the Confirmation Order, which, subject to a tolling agreement, enjoins the Channeled Claimants from taking any legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any Claim or demand that, under the Plan, is to be paid in whole or in part.

*Collateral Property*:  All Property of the Estate which is or is claimed to be subject to a Security Interest or Lien held by or for the benefit of a Creditor.

*Common Shares*:  The common shares of beneficial ownership interest in the Debtor as authorized by the articles of incorporation, bylaws and actions of the board of directors of the Debtor.

*Confirmation Date*:  The date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

*Confirmation Order*:  The Order of the Bankruptcy Court as entered on the docket confirming the Plan in accordance with the provisions of chapter 11, subdivision V of the Bankruptcy Code.

*Convenience Claim*:  Each Claim that is treated under the Convenience Class, Class 3 under the Plan.

*Convenience Class*:  Class 3 under the Plan.

*Creditor Obligation*:  The obligations payable by the Debtor to or for the benefit of Creditors on account of Allowed Claims pursuant to the Plan.

*Critical Vendors*:  Those entities who received payment on pre-petition obligations pursuant to the following orders: (i) Interim Order Authorizing Debtor To Honor Pre-Petition Obligations to Critical Vendors [ECF 16]; (ii) Final Order Authorizing Debtor To Honor Pre-Petition Obligations to Critical Vendors [ECF 123]; and (iii) Order Authorizing Debtor to Timely Pay Subcontractors In Conformance With California Law [ECF 124].

*Debtor*:  Classic Refrigeration SoCal, Inc., a California corporation.

*Disbursing Agent*:  The Reorganized Debtor, or such other qualified financial institution acceptable to both Hill Phoenix and the Debtor, as well as any agreed-upon successor.

*Disposable Income*:  The income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor, as set forth in the Projections.

*Disputed Claim*:  A Claim as to which the Debtor or any other party in interest has interposed an objection in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection has not been withdrawn or determined by Final Order.

*District Court Action:*  The civil action in the United States District Court, Central District of California as case 8:19-cv-00695-DOC-JDE, which is on appeal to the United States Court of Appeals for the Ninth Circuit as 22-55716.

*Effective Date*:  The Confirmation Date or, if a stay of the Confirmation Order is in effect on that date, the first Business Day after the date such stay is vacated.

*EIP*:  The Employee Incentive Program implemented by the Debtor which provides additional compensation to certain employees based on a formula reflective of express performance criteria, as set forth in the Projections.

*Equity Interest*:  Any equity interest in the Debtor represented by the Common Shares.

*Event of Default*:  Any event described in Article [X], but only to the extent determined by the Bankruptcy Court.

*Executory Contract and Unexpired Lease*:  Any agreement and any lease in which the Debtor was a party on the Petition Date, to the extent such agreement or lease is governed by section 365.

*Final Order*:  An order of a court as to which the time to appeal, leave to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing or leave to appeal shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, rehear or to seek leave to appeal shall have been waived in writing in form and substance satisfactory to the Debtor or, if an appeal, writ of *certiorari*, or reargument or rehearing thereof or to seek leave to appeal has been sought, such order of the court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied or from which reargument or rehearing or leave to appeal was sought, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing or leave to appeal shall have expired.

*First Day Declaration*:  The Declaration of David M. Rogers in Support of "First Day" Motions filed in the Bankruptcy Case as ECF 18.

*GAAP*:  Generally accepted accounting principles, consistently applied.

*Ghassemian Claimants:*  Each of the following:  (a) Mahyar Ghassemian; (b) Ghassemian Law Group, APC; (c) Paul A. Hoffman; and (d) Hoffman Legal Corporation.

*Holder*:  Any holder of a Creditor Obligation.

*Judgment Amount*:  $2.875 million plus the associated cost award.

*Judgment Lien*:  Any charge, Security Interest, encumbrance or Lien against property of the Debtor evidenced by the Notice of Judgment Lien recorded by Hill Phoenix on or about July 20, 2022 with the California Secretary of State.

*Litigation Claim:*  The Claim evidenced by the judgment in the Judgment Amount against the Debtor in the District Court Action.

*Order:*  An order entered on the docket in the Bankruptcy Court or another court having jurisdiction over the Debtor, including a Final Order.

*Payment Commencement Date*:  The Business Day on which Plan Payments are to commence, which shall be the fifth calendar day on the first month after the later to occur of:  (i) the Confirmation Date; and (ii) the day on which all Administrative Expenses shall have been paid in full or fully reserved.

*Payment Deferral Election*:  The rights accorded the Debtor to defer one or more Plan Payments under the terms set forth in the Plan].

*Petition Date*:  July 25, 2022, the date on which the Debtor filed its petition commencing the Bankruptcy Case.

*Plan*:  This Revised Subchapter V Plan of Reorganization dated March 22, 2023 filed in the Bankruptcy Case either in its present form or as may be amended or modified from time to time, together with the Plan Exhibits.

*Plan Exhibits*:  The Exhibits attached to the Plan, and such other documents submitted by the Debtor in support of the Plan.

*Plan Payments*:  The payments of Cash required to be made by the Debtor on each of the Required Payment Dates.

*Plan Term*:  The time within which Plan Payments are scheduled in order to make the payments required under the Plan.  That time could be as long as three years.

*Preferred Stock*:  On the Effective Date, the Insider Unsecured Claims will be converted into Preferred Stock and distributed to the respective Holders on a *pro rata* basis. The Preferred Stock will have a priority right to receive cumulative dividends at an annual rate of eight percent (8%), commencing on the Effective Date, provided, however, no dividends may be paid to the Holders of Preferred Stock, and no shares of Preferred Stock may be redeemed until all Creditor Obligations have been paid in full.  The Plan Supplement filed concurrently herewith contains a more detailed

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

description of the respective rights and restrictions on the Preferred Stock.

*Projections*:    The Cash Flow Projections attached to the Plan as Exhibit III.c with respect to the ability of the Debtor to make Plan Payments.

*Property of the Estate*:  The property described in section 541(a) and section 1186(a).

*Reorganized Debtor*:  Means the estate of the Debtor, as modified and restructured by the Plan on and after the Effective Date.

*Required Payment Date*:  Means the following:  (i) The Effective Date; (ii) the Payment Commencement Date; and (iii) comparably thereafter on a quarterly basis until the first to occur of (a) the Termination Date, and (b) the third anniversary of the Effective Date.

*Reserve for Disputed Claims*:  A separate fund maintained by the Reorganized Debtor into which any Plan Payment allocable on account of a Disputed Claim shall be held until such Disputed Claim has been Allowed in whole or in part pursuant to Final Order.

*Resolution of the Litigation Claim*.  The Disputed Litigation Claim shall have been resolved on and after the next Business Day after the amount of the Litigation Claim has been determined by Final Order.

*Schedules*:  The schedules of assets and liabilities and the statement of financial affairs, as such may be amended from time to time, filed by the Debtor with the Bankruptcy Court as required by section 521 and the Official Forms of the Bankruptcy Rules.

*Secured Claim*:  Any Claim in Class 2.

*Subchapter V Trustee*:  Robert P. Goe, as appointed by the United States Trustee evidenced by ECF 12, and any successor as may be appointed by the United States Trustee and accepts such appointment.

*Termination Date*.  That date on which all Creditor Obligations are paid in full, which is the first Business Day in the thirty-sixth (36th) month after the Confirmation Order is entered on the docket unless such Creditor Obligations are paid before that date.

*Unsecured Claim*:  Any Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim, a Secured Claim, or an Indemnification Claim.

*Unsecured Creditor*:  A Holder of an Unsecured Claim.

1

2

Exhibit III.a.
Debtor's Liquidation Analysis

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re: Classic Refrigeration SoCal, Inc.*                                                                          DRAFT

**Plan Liquidation Analysis**

| Projected Date of Valuation | 04/01/23 | | | | |
|---|---|---|---|---|---|
| | | | | **Chapter 7 Liquidation** | |
| | **Book** | **Asset Recovery %** | | **Asset Recovery $** | |
| | **Balance** | **Low** | **High** | **Low** | **High** |
| Cash on hand | $ 400,000 | 100% | 100% | $ 400,000 | $ 400,000 |
| Accounts receivable | 4,000,000 | 50% | 50% | 2,000,000 | 2,000,000 |
| Inventory | 15,000 | 0% | 0% | - | - |
| Retainers | | | | | |
| Pahl McCay client trust | 3,000 | 100% | 100% | 3,000 | 3,000 |
| | 3,000 | | | 3,000 | 3,000 |
| Security deposits | | | | | |
| Fullerton deposit | 23,000 | 0% | 0% | - | - |
| United Refrigeration deposit | 50,000 | 0% | 0% | - | - |
| | 73,000 | | | - | - |
| Fixed assets | | | | | |
| Computer and electronics | 70,000 | 0% | 10% | - | 7,000 |
| Office furniture | 40,000 | 0% | 25% | - | 10,000 |
| Small tools | 95,000 | 0% | 25% | - | 23,750 |
| Vehicles [1] | 2,000,000 | 12.5% | 15% | 250,000 | 300,000 |
| | 2,205,000 | | | 250,000 | 340,750 |
| Total assets for liquidation | $ 6,696,000 | | | 2,653,000 | 2,743,750 |
| Chapter 7 expenses | | | | | |
| Bankruptcy estate expenses | | | | 100,000 | 200,000 |
| Chapter 7 trustee fees | | | | 85,000 | 100,000 |
| | | | | 185,000 | 300,000 |
| Projected net asset recoveries | | | | $ 2,468,000 | $ 2,443,750 |
| Chapter 11 administrative expense claims | | | | | |
| Buchalter | | | | $ 400,000 | $ 400,000 |
| Baker Tilly | | | | 50,000 | 50,000 |
| Robert P. Goe, Subchapter V Trustee | | | | 45,000 | 45,000 |
| Union Refrigeration administrative claim | | | | 82,000 | 82,000 |
| Chapter 11 income and other tax liability | | | | 300,000 | 300,000 |
| Other administrative expenses, including chapter 11 vendors | | | | 50,000 | 75,000 |
| Total Chapter 11 administrative claims | | | | 927,000 | 952,000 |
| Secured claims | | | | 1,650,000 | 1,650,000 |
| Priority claims | | | | 300,000 | 300,000 |
| Cash available to pay general unsecured claims | | | | (409,000) | (458,250) |
| Unsecured claims | | | | 3,500,000 | 3,500,000 |
| Excess/(deficiency) | | | | $ (3,909,000) | $ (3,958,250) |
| Projected recovery to general unsecured creditors | | | | 0.00% | 0.00% |

Notes:

*Sources* : Accounting records of the Debtor and claims information.

[1] The Debtor's balance sheet reflects both owned and leased vehicles as assets. In the event of liquidation, the
leased/rented vehicles will be returned to their owners. The Debtor estimates proceeds from liquidation of its owned
vehicles as approximately $275,000.

**All underlying information was provided to Baker Tilly by the Debtor. Baker Tilly has not performed an audit of the information**
**and, therefore, cannot verify its accuracy. Third parties should rely only on the advice of their own advisors. Any disputes**
**regarding the use of this information must be heard in the Debtor's bankruptcy case in the United States Bankruptcy Court for**
**the Central District of California.**

Exhibit III.c
Cash Flow Projections with Respect to the Ability of the
Debtor to make Payments under the Plan

Attached are cash flow projections (the "Projections") prepared by the Debtor and its financial advisors with respect to the ability of the Debtor to make the Plan Payments.  While the Debtor believes that the Projections are based on reasonable assumptions and should be achievable, neither the Debtor nor any of its advisors can give any assurance that the Debtor's actual performance will be as projected.  Anyone with questions about the Projections should consult with their own accountant or other financial advisor.

*In re: Classic Refrigeration SoCal, Inc.*
**Summary of Plan Projections for Post-Confirmation Period**

DRAFT

| Post-Confirmation Month #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| **Month Ended:** | 04/30/23 | 05/31/23 | 06/30/23 | 07/31/23 | 08/31/23 | 09/30/23 | 10/31/23 | 11/30/23 | 12/31/23 |
| Beginning cash balance | $ 400,000 | $ 737,040 | $ 747,020 | $ 718,547 | $ 1,100,797 | $ 1,448,597 | $ 1,699,117 | $ 1,389,107 | $ 1,336,627 |
| **Income Projections:** | | | | | | | | | |
| Projected revenues | $ 2,800,000 | $ 2,800,000 | $ 2,800,000 | $ 2,800,000 | $ 2,800,000 | $ 2,800,000 | $ 2,100,000 | $ 2,100,000 | $ 2,100,000 |
| Projected cost of goods sold | | | | | | | | | |
| Labor | (650,000) | (650,000) | (650,000) | (600,000) | (650,000) | (650,000) | (600,000) | (600,000) | (600,000) |
| Labor - union dues and benefits (employer portion) | (250,000) | (250,000) | (250,000) | (200,000) | (250,000) | (250,000) | (225,000) | (225,000) | (225,000) |
| Sub-contractors | (300,000) | (300,000) | (300,000) | (250,000) | (300,000) | (300,000) | (225,000) | (225,000) | (225,000) |
| Supplies & materials | (400,000) | (400,000) | (400,000) | (350,000) | (400,000) | (400,000) | (335,000) | (335,000) | (335,000) |
| Worker's compensation insurance | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) |
| Other costs of good sold costs | (350,000) | (350,000) | (350,000) | (275,000) | (350,000) | (350,000) | (250,000) | (250,000) | (250,000) |
| Total projected cost of goods sold | (1,968,000) | (1,968,000) | (1,968,000) | (1,693,000) | (1,968,000) | (1,968,000) | (1,653,000) | (1,653,000) | (1,653,000) |
| Gross profit | 832,000 | 832,000 | 832,000 | 1,107,000 | 832,000 | 832,000 | 447,000 | 447,000 | 447,000 |
| | | | | | | | | | |
| Projected operating expenses: | | | | | | | | | |
| Advertising | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Auto - repairs and maintenance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Bank charges & fees | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Dues & subscriptions | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Employee benefits | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| ERP subscription costs | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Insurance | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| Interest - vehicles | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| Meals & entertainment | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Meeting costs & meals | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Office supplies & software | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Other expenses | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Payroll [2] | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 205,500 | 285,500 | 205,500 | 285,500 |
| Payroll - officers' regular wages | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 |
| Payroll - officers' incentive compensation [2] | - | - | - | - | - | - | - | - | - |
| Payroll - union dues and benefits (employer portion) | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Reimbursements | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Rent & lease [3] | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Rental equipment - office | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Shipping, freight & delivery | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Taxes & licenses | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Utilities | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| | 401,400 | 401,400 | 481,400 | 401,400 | 401,400 | 401,400 | 481,400 | 401,400 | 481,400 |
| Net income (loss) before capital and Plan expenditures | 430,600 | 430,600 | 350,600 | 705,600 | 430,600 | 350,600 | 45,600 | 45,600 | (34,400) |
| | | | | | | | | | |
| Replacement of vehicles and machinery [4] | 14,460 | 26,520 | 18,240 | 8,700 | 8,700 | 25,980 | 40,960 | 23,980 | 28,360 |
| | | | | | | | | | |
| Administrative expenses | | | | | | | | | |
| Buchalter, APC (net of retainer) | - | 250,000 | 175,000 | - | - | - | - | - | - |
| Baker Tilly | - | 25,000 | 30,000 | - | - | - | - | - | - |
| Robert P. Goe, Subchapter V Trustee | - | 45,000 | - | - | - | - | - | - | - |
| Income and other tax liability (federal and state) [5] | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| United Refrigeration, Inc. | - | - | 81,733 | - | - | - | - | - | - |
| | 25,000 | 345,000 | 311,733 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| | | | | | | | | | |
| Secured claims | | | | | | | | | |
| US Small Business Administration | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| Toyota Motor Credit lease (Forklift) | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Vehicle loans and leases | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 |
| | | | | | | | | | |
| Priority claims | | | | | | | | | |
| Taxing agencies [6] | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| | | | | | | | | | |
| Unsecured claims - convenience class [7] | 5,000 | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| Projected disposable income (loss) | $ 337,040 | $ 9,980 | $ (28,473) | $ 622,800 | $ 347,800 | $ 250,520 | $ (69,460) | $ (52,480) | $ (136,860) |
| Projected quarterly disposable income (loss) | | | $ 318,547 | | | $ 1,221,120 | | | $ (258,800) |
| | | | | | | | | | |
| Unsecured claims [8] | $ - | $ - | $ - | $ 240,550 | $ - | $ - | $ 240,550 | $ - | $ - |
| | | | | | | | | | |
| Insider claims | | | | | | | | | |
| Dave Rogers and affiliates | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| Ending cash after payment of operational expenses and claims | $ 737,040 | $ 747,020 | $ 718,547 | $ 1,100,797 | $ 1,448,597 | $ 1,699,117 | $ 1,389,107 | $ 1,336,627 | $ 1,199,767 |

Notes:

*Sources:* Debtor's internal financial statements and other financial data.

[1] Includes quarterly bonuses totaling $320,000 per year (or, $80,000 quarterly).

[2] Consistent with settlement, no incentive compensation for officers is budgeted in 2023. In years following, incentive compensation of $261,800 is projected, to be paid annually after year-end.

[3] Renewal of rent has been increased to $40,000 in 2024.

[4] Replacement of vehicles assumes 20% down and 5% straight line for remaining of vehicle cost.

[5] Federal and state tax due are estimated at $900,000.

[6] Priority tax claims are estimated at $300,000 per year.

[7] Convenience class will be capped at $5,000 with a 90% recovery and estimated at $5,000 based upon ballot elections.

[8] Amount paid for unsecured creditors is total disposable income after operations, administrative costs, secured claims and any priority claims.

**All underlying information was provided to Baker Tilly by the Debtor. Baker Tilly has not performed an audit of the information and, therefore, cannot verify its accuracy. Third parties should rely only on the advice of their own advisors. Any disputes regarding the use of this information must be heard in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California.**

*In re: Classic Refrigeration SoCal, Inc.*
**Summary of Plan Projections for Post-Confirmation Period**

DRAFT

| Post-Confirmation Month #: | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month Ended: | 01/31/24 | 02/28/24 | 03/31/24 | 04/30/24 | 05/31/24 | 06/30/24 | 07/31/24 | 08/31/24 | 09/30/24 | 10/31/24 | 11/30/24 | 12/31/24 |
| Beginning cash balance | 1,199,767 | 784,827 | 679,087 | 520,447 | 832,527 | 1,133,807 | 1,358,147 | 1,420,177 | 1,706,877 | 1,926,177 | 1,582,967 | 1,489,537 |
| **Income Projections:** | | | | | | | | | | | | |
| Projected revenues | 2,100,000 | 2,100,000 | 2,100,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,100,000 | 2,100,000 | 2,100,000 |
| Projected cost of goods sold | | | | | | | | | | | | |
| Labor | (600,000) | (600,000) | (600,000) | (650,000) | (650,000) | (650,000) | (650,000) | (650,000) | (650,000) | (600,000) | (600,000) | (600,000) |
| Labor - union dues and benefits (employer portion) | (225,000) | (225,000) | (225,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (225,000) | (225,000) | (225,000) |
| Sub-contractors | (225,000) | (250,000) | (250,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) | (225,000) | (225,000) | (225,000) |
| Supplies & materials | (335,000) | (335,000) | (335,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (335,000) | (335,000) | (335,000) |
| Worker's compensation insurance | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) |
| Other costs of good sold costs | (250,000) | (250,000) | (250,000) | (350,000) | (350,000) | (350,000) | (350,000) | (350,000) | (350,000) | (250,000) | (250,000) | (250,000) |
| Total projected cost of goods sold | (1,653,000) | (1,678,000) | (1,653,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,653,000) | (1,653,000) | (1,653,000) |
| Gross profit | 447,000 | 422,000 | 447,000 | 832,000 | 832,000 | 832,000 | 832,000 | 832,000 | 832,000 | 447,000 | 447,000 | 447,000 |
| Projected operating expenses: | | | | | | | | | | | | |
| Advertising | 12,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Auto - repairs and maintenance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Bank charges & fees | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Dues & subscriptions | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Employee benefits | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| ERP subscription costs | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Insurance | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| Interest - vehicles | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| Meals & entertainment | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Meeting costs & meals | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Office supplies & software | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Other expenses | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Payroll [1] | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 |
| Payroll - officers' regular wages | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 |
| Payroll - officers' incentive compensation [2] | 261,800 | - | - | - | - | - | - | - | - | - | - | - |
| Payroll - union dues and benefits (employer portion) | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Reimbursements | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Rent & lease [3] | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| Rental equipment - office | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Shipping, freight & delivery | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Taxes & licenses | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Utilities | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| | 680,200 | 416,400 | 496,400 | 416,400 | 416,400 | 496,400 | 417,400 | 417,400 | 497,400 | 417,400 | 417,400 | 497,400 |
| Net income (loss) before capital and Plan expenditures | (233,200) | 5,600 | (49,400) | 415,600 | 415,600 | 335,600 | 414,600 | 414,600 | 334,600 | 29,600 | 29,600 | (50,400) |
| Replacement of vehicles and machinery [4] | 107,640 | 37,240 | 35,140 | 29,420 | 40,220 | 37,160 | 37,920 | 53,800 | 41,200 | 58,160 | 48,930 | 67,470 |
| Administrative expenses | | | | | | | | | | | | |
| Buchalter, APC (net of retainer) | - | - | - | - | - | - | - | - | - | - | - | - |
| Baker Tilly | - | - | - | - | - | - | - | - | - | - | - | - |
| Robert P. Goe, Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Income and other tax liability (federal and state) [5] | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| United Refrigeration, Inc. | - | - | - | - | - | - | - | - | - | - | - | - |
| | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Secured claims | | | | | | | | | | | | |
| US Small Business Administration | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| Toyota Motor Credit lease (Forklift) | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Vehicle loans and leases | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 |
| Priority claims | | | | | | | | | | | | |
| Taxing agencies [6] | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Unsecured claims - convenience class [7] | - | - | - | - | - | - | - | - | - | - | - | - |
| Projected disposable income (loss) | (414,940) | (105,740) | (158,640) | 312,080 | 301,280 | 224,340 | 302,580 | 286,700 | 219,300 | (102,660) | (93,430) | (191,970) |
| Projected quarterly disposable income (loss) | | | (679,320) | | | 837,700 | | | 808,580 | | | (388,060) |
| Unsecured claims [8] | - | - | - | - | - | - | 240,550 | - | - | 240,550 | - | - |
| Insider claims | | | | | | | | | | | | |
| Dave Rogers and affiliates | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - |
| Ending cash after payment of operational expenses and claims | 784,827 | 679,087 | 520,447 | 832,527 | 1,133,807 | 1,358,147 | 1,420,177 | 1,706,877 | 1,926,177 | 1,582,967 | 1,489,537 | 1,297,567 |

Notes:

Sources: Debtor's internal financial statements and other financial data.

[1] Includes quarterly bonuses totaling $320,000 per year (or, $80,000 quarterly).

[2] Consistent with settlement, no incentive compensation for officers is budgeted in 2023. In years following, incentive compensation of $261,800 is projected, to be paid annually after year-end.

[3] Renewal of rent has been increased to $40,000 in 2024.

[4] Replacement of vehicles assumes 20% down and 5% straight line for remaining of vehicle cost.

[5] Federal and state tax due are estimated at $900,000.

[6] Priority tax claims are estimated at $300,000 per year.

[7] Convenience class will be capped at $5,000 with a 90% recovery and estimated at $5,000 based upon ballot elections.

[8] Amount paid for unsecured creditors is total disposable income after operations, administrative costs, secured claims and any priority claims.

All underlying information was provided to Baker Tilly by the Debtor. Baker Tilly has not performed an audit of the information and, therefore, cannot verify its accuracy. Third parties should rely only on the advice of their own advisors. Any disputes regarding the use of this information must be heard in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California.

*In re: Classic Refrigeration SoCal, Inc.*
**Summary of Plan Projections for Post-Confirmation Period**

DRAFT

| Post-Confirmation Month #: | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | Post Confirmation Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month Ended: | 01/31/25 | 02/28/25 | 03/31/25 | 04/30/25 | 05/31/25 | 06/30/25 | 07/31/25 | 08/31/25 | 09/30/25 | 10/31/25 | 11/30/25 | 12/31/25 | 01/31/26 | 2/29/26 | 03/31/26 | |
| Beginning cash balance | 1,297,567 | 926,077 | 812,907 | 1,014,097 | 1,254,187 | 1,518,717 | 1,690,167 | 1,727,767 | 1,973,517 | 2,157,087 | 1,804,647 | 1,692,757 | 1,500,867 | 1,038,617 | 1,378,637 | 400,000 |
| **Income Projections:** | | | | | | | | | | | | | | | | |
| Projected revenues | 2,100,000 | 2,100,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,800,000 | 2,100,000 | 2,100,000 | 2,100,000 | 2,100,000 | 2,100,000 | 2,800,000 | 89,600,000 |
| **Projected cost of goods sold** | | | | | | | | | | | | | | | | |
| Labor | (600,000) | (600,000) | (650,000) | (650,000) | (650,000) | (650,000) | (650,000) | (650,000) | (650,000) | (600,000) | (600,000) | (600,000) | (600,000) | (600,000) | (650,000) | (22,550,000) |
| Labor - union dues and benefits (employer portion) | (225,000) | (225,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (225,000) | (225,000) | (225,000) | (225,000) | (225,000) | (250,000) | (8,550,000) |
| Sub-contractors | (225,000) | (225,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) | (300,000) | (225,000) | (225,000) | (225,000) | (225,000) | (225,000) | (300,000) | (9,575,000) |
| Supplies & materials | (335,000) | (335,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (400,000) | (335,000) | (335,000) | (335,000) | (335,000) | (335,000) | (400,000) | (13,310,000) |
| Worker's compensation insurance | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (18,000) | (648,000) |
| Other costs of goods sold | (250,000) | (250,000) | (350,000) | (350,000) | (350,000) | (350,000) | (350,000) | (350,000) | (350,000) | (250,000) | (250,000) | (250,000) | (250,000) | (250,000) | (350,000) | (10,925,000) |
| Total projected cost of goods sold | (1,653,000) | (1,653,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,968,000) | (1,653,000) | (1,653,000) | (1,653,000) | (1,653,000) | (1,653,000) | (1,968,000) | (65,558,000) |
| Gross profit | 447,000 | 447,000 | 832,000 | 832,000 | 832,000 | 832,000 | 832,000 | 832,000 | 832,000 | 447,000 | 447,000 | 447,000 | 447,000 | 447,000 | 832,000 | 24,042,000 |
| **Projected operating expenses:** | | | | | | | | | | | | | | | | |
| Advertising | 12,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 364,000 |
| Auto - repairs and maintenance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 540,000 |
| Bank charges & fees | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 10,800 |
| Dues & subscriptions | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 5,400 |
| Employee benefits | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 180,000 |
| ERP subscription costs | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 144,000 |
| Insurance | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 468,000 |
| Interest - vehicles | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 489,000 |
| Meals & entertainment | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 72,000 |
| Meeting costs & meals | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 14,400 |
| Office supplies & software | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 72,000 |
| Other expenses | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 180,000 |
| Payroll [1] | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 205,500 | 205,500 | 285,500 | 8,358,000 |
| Payroll - officers' regular wages | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 54,500 | 1,962,000 |
| Payroll - officers' incentive compensation [2] | 261,800 | - | - | - | - | - | - | - | - | - | - | - | 261,800 | - | - | 785,400 |
| Reimbursements | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 14,400 |
| Payroll - union dues and benefits (employer portion) | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 108,000 |
| Rent & lease [3] | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 1,305,000 |
| Rental equipment - office | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 5,400 |
| Shipping, freight & delivery | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 108,000 |
| Taxes & licenses | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 5,400 |
| Utilities | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 720,000 |
| | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 720,000 |
| | 681,200 | 417,400 | 497,400 | 417,400 | 417,400 | 497,400 | 417,400 | 417,400 | 497,400 | 417,400 | 417,400 | 497,400 | 679,200 | 417,400 | 497,400 | 16,625,800 |
| Net income (loss) before capital and Plan expenditures | (234,200) | 29,600 | 334,600 | 414,600 | 414,600 | 334,600 | 414,600 | 414,600 | 334,600 | 29,600 | 29,600 | (50,400) | (232,200) | 29,600 | 334,600 | 7,416,200 |
| Replacement of vehicles and machinery [4] | 63,190 | 66,670 | 57,310 | 98,410 | 73,970 | 87,050 | 60,350 | 92,750 | 74,930 | 65,390 | 65,390 | 65,390 | 153,950 | 75,730 | 86,530 | 1,977,210 |
| **Administrative expenses** | | | | | | | | | | | | | | | | |
| Buchalter, APC (net of retainer) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 425,000 |
| Baker Tilly | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 55,000 |
| Robert P. Goe, Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 45,000 |
| Income and other tax liability (federal and state) [5] | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 900,000 |
| United Refrigeration, Inc. | | | | | | | | | | | | | | | | 81,733 |
| | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 1,506,733 |
| **Secured claims** | | | | | | | | | | | | | | | | |
| US Small Business Administration | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 25,200 |
| Toyota Motor Credit lease (Forklift) | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 14,400 |
| Vehicle loans and leases | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 1,440,000 |
| | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 41,100 | 1,479,600 |
| **Priority claims** | | | | | | | | | | | | | | | | |
| Taxing agencies [7] | 8,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 316,000 |
| Unsecured claims - convenience class [8] | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5,000 |
| Projected disposable income (loss) | (371,490) | (113,170) | 201,190 | 240,090 | 264,530 | 171,450 | 278,150 | 245,750 | 183,570 | (111,890) | (111,890) | (191,890) | (462,250) | (122,230) | 171,970 | 2,131,657 |
| Projected quarterly disposable income (loss) | | | (283,470) | | | 676,070 | | | 707,470 | | | (415,670) | | | (412,510) | |
| Unsecured claims [8] | - | - | - | - | - | - | - | 240,550 | - | - | - | 240,550 | - | - | - | 1,443,300 |
| **Insider claims** | | | | | | | | | | | | | | | | |
| Dave Rogers and affiliates | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ending cash after payment of operational expenses and claims | 926,077 | 812,907 | 1,014,097 | 1,254,187 | 1,518,717 | 1,690,167 | 1,727,767 | 1,973,517 | 2,157,087 | 1,804,647 | 1,692,757 | 1,500,867 | 1,038,617 | 1,378,637 | 1,550,607 | 1,088,357 |

Notes:

Sources: Debtor's internal financial statements and other financial data.

[1] Includes quarterly bonuses totaling $320,000 per year (or, $80,000 quarterly).

[2] Consistent with settlement, no incentive compensation for officers is budgeted in 2023. In years following, incentive compensation of $261,800 is projected, to be paid annually after year-end.

[3] Renewal of rent has been increased to $40,000 in 2024.

[4] Replacement of vehicles assumes 20% down and 5% straight line for remaining of vehicle cost.

[5] Federal and state tax due are estimated at $900,000.

[6] Priority tax claims are estimated at $300,000 per year.

[7] Convenience class will be capped at $5,000 with a 90% recovery and estimated at $5,000 based upon ballot elections.

[8] Amount paid for unsecured creditors is total disposable income after operations, administrative costs, secured claims and any priority claims.

All underlying information was provided to Baker Tilly by the Debtor. Baker Tilly has not performed an audit of the information and, therefore, cannot verify its accuracy. Third parties should rely only on the advice of their own advisors. Any disputes regarding the use of this information must be heard in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California.

# PLAN SUPPLEMENT

# PLAN SUPPLEMENT

This plan supplement (the "Plan Supplement") relates to the Revised Subchapter V Plan of Reorganization dated March 22, 2023 (the "Plan") filed by Classic Refrigeration SoCal, Inc. (the "Corporation"). The Plan Supplement provides a more detailed description of the respective rights and restrictions on the Preferred Stock. The Plan Supplement incorporates the definitions in the Plan.

1.    <u>Dividends</u>.

From and after the date of the issuance of any shares of Preferred Stock, dividends shall accrue in respect of each share of Preferred Stock at the rate per annum equal to eight percent (8%), compounded annually, on an amount equal to the Original Issue Price of each such share of Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to the Preferred Stock) (the "Accruing Dividends"). Accruing Dividends shall accrue from day to day, whether or not declared, and shall be cumulative; <u>provided</u>, <u>however</u>, that except as set forth in <u>Subsection 2.1</u>, such Accruing Dividends shall be payable only (i) when, as, and if declared by the Board of Directors of the Corporation and the Corporation shall be under no obligation to pay such Accruing Dividends, and (ii) in any event, not before all Creditor Obligations have been paid in full in accordance with the Plan. The Corporation shall not declare, pay or set aside any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Shares payable in shares of Common Shares) unless (in addition to the obtaining of any other consents required) the holders of Preferred Stock then outstanding shall first receive a dividend on each outstanding share of Preferred Stock in an amount equal to the aggregate Accruing Dividends then accrued on such share of Preferred Stock and not previously paid.

2.    <u>Liquidation, Dissolution or Winding Up; Certain Mergers, Consolidations and Asset Sales</u>.

2.1    <u>Preferential Payments to Holders of Preferred Stock</u>. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of Preferred Stock then outstanding shall be entitled to be paid out of the assets of the Corporation available for distribution to its shareholders, and in the event of a Deemed Liquidation Event (as defined below), the holders of Preferred Stock then outstanding shall be entitled to be paid out of the consideration payable to shareholders in such Deemed Liquidation Event or out of the consideration received by the Corporation for such Deemed Liquidation Event, together with any other assets of the Corporation available for distribution to its shareholders, as applicable, before any payment shall be made to the holders of Common Shares by reason of their ownership thereof. If, upon any such liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event, the assets of the Corporation available for distribution to its shareholders shall be insufficient to pay the holders of Preferred Stock the full amount to which they shall be entitled under this <u>Subsection 2.1</u>, the holders of Preferred Stock shall share ratably in any distribution of the assets available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the Preferred Stock held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

2.2    <u>Deemed Liquidation Events</u>.    Each of the following events shall be considered a "Deemed Liquidation Event" unless the holders of all of the outstanding shares of Preferred Stock (the "Requisite Holders") elect otherwise by written notice sent to the Corporation at least 14 days prior to the effective date of any such event:

(a) a merger or consolidation in which (i) the Corporation is a constituent party or (ii) a subsidiary of the Corporation is a constituent party and the Corporation issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving the Corporation or a subsidiary in which the shares of capital stock of the Corporation outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital stock that represent, immediately following such merger or consolidation, at least a majority, by voting power, of the capital stock of (1) the surviving or resulting corporation or (2) if the surviving or resulting corporation is a wholly owned subsidiary of another corporation immediately following such merger or consolidation, the parent corporation of such surviving or resulting corporation; or

(b) (1) the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or (2) the sale or disposition (whether by merger, consolidation or otherwise, and whether in a single transaction or a series of related transactions) of one or more subsidiaries of the Corporation if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly owned subsidiary of the Corporation.

3.    <u>Voting</u>.

3.1    <u>General</u>.    Except as set forth in <u>Subsection 3.2</u> or as required by California law, the Preferred Stock shall be non-voting.

3.2    <u>Preferred Stock Protective Provisions</u>.    Notwithstanding anything to the contrary herein, for so long as at least twenty percent (20%) of the shares of Preferred Stock issued by the Corporation on the date of first issuance of Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to the Preferred Stock) remain outstanding, the Corporation shall not do the following without the written consent or affirmative vote of the holders of at least a majority of the issued and outstanding Preferred Stock given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void *ab initio*, and of no force or effect.

3.2.1    liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation or any other Deemed Liquidation Event, or consent to any of the foregoing;

3.2.2    amend, alter or repeal any provision of the Corporation's Articles of Incorporation or Bylaws;

3.2.3    (i) create, or authorize the creation of, or issue or obligate itself to issue shares of, or reclassify, any capital stock unless the same ranks junior to the Preferred Stock with respect to its rights, preferences and privileges, or (ii) increase the authorized number of shares of Preferred Stock or any additional class or series of capital stock of the Corporation unless the same ranks junior to the Preferred Stock with respect to its rights, preferences and privileges;

3.2.4    purchase or redeem (or permit any subsidiary to purchase or redeem) or pay or declare any dividend or make any distribution on, any shares of capital stock of the Corporation other than (i) redemptions of or dividends or distributions on the Preferred Stock as expressly authorized herein, (ii) dividends or other distributions payable on the Common Shares solely in the form of additional shares of Common Shares and (iii) repurchases of stock from former employees, officers, directors, consultants or other persons who performed services for the Corporation or any subsidiary in connection with the cessation of such employment or service at no greater than the original purchase price thereof;

3.2.5    create, or authorize the creation of, or issue, or authorize the issuance of any debt security or create any lien or security interest (except for purchase money liens or statutory liens of landlords, mechanics, materialmen, workmen, warehousemen and other similar persons arising or incurred in the ordinary course of business) or incur other indebtedness for borrowed money, including but not limited to obligations and contingent obligations under guarantees, or permit any subsidiary to take any such action with respect to any debt security lien, security interest or other indebtedness for borrowed money; or

3.2.6    create, or hold capital stock in, any subsidiary that is not wholly owned (either directly or through one or more other subsidiaries) by the Corporation, or permit any subsidiary to create, or authorize the creation of, or issue or obligate itself to issue, any shares of any class or series of capital stock, or sell, transfer or otherwise dispose of any capital stock of any direct or indirect subsidiary of the Corporation, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary.

4.    <u>No Right to Convert</u>.  The shares of Preferred Stock are not convertible into shares Common Shares.

5.    <u>Redemption</u>.

5.1    <u>General</u>.  The Corporation may not redeem any shares of Preferred Stock until all Creditor Obligations have been paid in full in accordance with the Plan.  At any time after all Creditor Obligations have been paid in full, shares of Preferred Stock shall be redeemed by the Corporation at a price equal to the original issue price per share, plus any Accruing Dividends accrued but unpaid thereon (the "Redemption Price"), in three (3) annual installments commencing not more than sixty (60) days after receipt by the Corporation from the holders of all shares of Preferred Stock then outstanding of written notice requesting redemption of all shares of Preferred Stock (the "Redemption Request").  Upon receipt of a Redemption Request, the Corporation shall apply all of its assets to any such redemption, and to no other corporate purpose, except to the extent prohibited by California law governing distributions to shareholders.  The date of each such installment provided in the Redemption Notice (as defined below) shall be referred to as a

"Redemption Date."  On each Redemption Date, the Corporation shall redeem, on a pro rata basis in accordance with the number of shares of Preferred Stock owned by each holder, that number of outstanding shares of Preferred Stock determined by dividing (i) the total number of shares of Preferred Stock outstanding immediately prior to such Redemption Date by (ii) the number of remaining Redemption Dates (including the Redemption Date to which such calculation applies). If, on any Redemption Date, California law governing distributions to shareholders prevents the Corporation from redeeming all shares of Preferred Stock to be redeemed, the Corporation shall ratably redeem the maximum number of shares that it may redeem consistent with such law, and shall redeem the remaining shares as soon as it may lawfully do so under such law.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18400 Von Karman Ave., Suite 800, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*):  REVISED SUBCHAPTER V PLAN OF REORGANIZATION DATED MARCH 22, 2023.
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/22/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
SEE ATTACHED

☒  Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) 3/22/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES IS SUSPENDED AT THIS TIME per Judge Albert's courtroom rule.

☒  Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 3/22/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/22/2023 | LAURIE VERSTEGEN | /s/Laurie Verstegen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

**Served electronically to:**

John A Boyd on behalf of Creditor United Refrigeration Inc
fednotice@tclaw.net

Greg P Campbell on behalf of Interested Party Courtesy NEF
ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com

Nicholas S Couchot on behalf of Debtor Classic Refrigeration SoCal, Inc.
ncouchot@buchalter.com, docket@buchalter.com;marias@buchalter.com

Caroline Djang on behalf of Debtor Classic Refrigeration SoCal, Inc.
cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com

Caroline Djang on behalf of Plaintiff Classic Refrigeration SoCal, Inc.
cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com

Scott D Fink on behalf of Creditor Toyota Industries Commercial Finance Inc.
colcaecf@weltman.com

Jeffrey Garfinkle on behalf of Debtor Classic Refrigeration SoCal, Inc.
jgarfinkle@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com

Jeffrey Garfinkle on behalf of Plaintiff Classic Refrigeration SoCal, Inc.
jgarfinkle@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com

Jared Glicksman on behalf of Creditor Hill Phoenix, Inc.
jglicksman@yocca.com

Jared Glicksman on behalf of Defendant Hill Phoenix, Inc.
jglicksman@yocca.com

Robert Paul Goe (TR)
bktrustee@goeforlaw.com, bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforlaw.com

Arvind Nath Rawal on behalf of Creditor Ally Bank, c/o AIS Portfolio Services, LLC
arawal@aisinfo.com

Timothy J Silverman on behalf of Creditor ALLY BANK
tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Jason M Torf on behalf of Creditor Hill Phoenix, Inc.
jason.torf@tuckerellis.com, Laura.Hong@tuckerellis.com;Brian.Brookey@tuckerellis.com

Jason M Torf on behalf of Defendant Hill Phoenix, Inc.
jason.torf@tuckerellis.com, Laura.Hong@tuckerellis.com;Brian.Brookey@tuckerellis.com

Laurie A Traktman on behalf of Interested Party Courtesy NEF
lat@gslaw.org, paralegal@gslaw.org

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**Served via U.S. Mail:**

369 Industries
16442 Gothard St., #C
Huntington Beach, CA  92647

AAA Electric Motor Sales &
Service
1346 Venice Blvd.
Los Angeles, CA  90006

Absolute Glass
P.O. Box 5203
Whittier, CA  90607-5203

Accountable Air Conditioning,
Inc.
13089 Peyton Dr., #C136
Chino Hills, CA  91709

AcornVac, Inc.
P.O. Box 3527
La Puente, CA  91744-0527

ADT Protection 1
P.O. Box 219044
Kansas City, MO  64121-9044

Advanced Title 24
2000 E Chapman Ave., Suite
202
Fullerton, CA  92831

A-Gas US Inc.
P.O. Box 639445
Cincinnati, OH  45263-9445

Ahern Rentals
P.O. Box 271390
Las Vegas, NV  89127-1390

Air Conditioning & Refrigeration
Industrial Joint Truste Funds
3500 W. Orange Ave.
Orange, CA  92868

Air Conditioning Solutions
(ACS)
2223 El Sol Ave.
Los Angeles, CA  90011

Airgas USA, LLC
1415 Grand Avenue
San Marcos, CA  92078

Albright Lighting Plastics *COD
1737 South Claudina Way
Anaheim, CA  92805

All Access Services, Inc.
3364 Helix St.
Spring Valley, CA  91977

All Sale Electric
9261 Jordan Ave.
Chatsworth, CA  91311

All Sale Electric
9261 Jordan Avenue
Chatsworth, CA  91311

Allied Electronics, Inc.
7151 Jack Newell Blvd. S.
Fort Worth, TX  76118

Allied Refrigeration
P.O. Box 2411
Long Beach, CA  90801-2411

Ally Auto - Truck 108 - 8441
P.O. Box 78234
Phoenix, AZ  85062

Ally Auto-Truck 101 - 9339
P.O. Box 78234
Phoenix, AZ  85062-8234

Ally Bank
P.O. Box 78234
Phoenix, AZ  85062

Ally Bank c/o AIS Portfolio Svcs
4515 N. Santa Fe Ave., Dept.
APS
Oklahoma City, OK  73118

Ally Bank Department
AIS Portfolio Services, LLC
4515 N. Santa Fe Ave, Dept.
APS
Oklahoma City, OK  73118

Ally Bank Department
AIS Portfolio Services, LLC
Account: 5791
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

Ally Bank Department
AIS Portfolio Services, LLC
Account: 5704
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

Ally Bank Department
AIS Portfolio Services, LLC
Account 5796
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

Ally Bank Department
AIS Portfolio Services, LLC
Account: 4967
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Ally Bank Department
AIS Portfolio Services, LLC
Account: 3662
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

American Express
P.O. Box 0001
Los Angeles, CA  90096

American Refrigeration
Supplies, In
P.O. Box 21127
Phoenix, AZ  85036

Appliance Enameling & Service
(AES)
575 College Commerce Way
Upland, CA  91786

ARCA/MCA
3602 Inland Empire Blvd. Suite
#B-2
Ontario, CA  91764

Arctic Cooling Systems
P.O. Box 271390
Las Vegas, NV  89127-1390

Arizona Dept of Taxation
1600 West Monroe St.
Phoenix, AZ  85007

Artic Glacier
P.O. Box 856530
Minneapolis, MN  55485

AT&T
P.O. Box 5014
Carol Stream, IL  60197-5014

Atlas Crane Service
14818 Midland Rd.
Poway, CA  92064

Atlas General Insurance Svcs,
LLC
P.O. Box 88006
Chicago, IL  60680

Atlas Sheet Metal
19 Musick
Irvine, CA  92618-1638

B&K Electric Co., Inc.
P.O. Box 31001-1768
Pasadena, CA  91110-1768

BAC Baltimore Aircoil Co
(COD)
13259 Collections Center Dr.
Chicago, IL  60693

Baker Distributing Company
14610 Breakers Drive, #100
Jacksonville, FL  32258

Baker Distributing Company
c/o Mark A. Kirkorsky, P.C.
Joseph L. Whipple
P.O. Box 25287
Tempe, AZ  85285

Bank of America
P.O. Box 31785
Tampa, FL  33631-3785

Bank of America - Truck 122 -
2133
P.O. Box 15220
Wilmington, DE  19886-5220

Bitzer US Inc.
P.O. Box 102010
Atlanta, GA  30368-2010

Blueair FSE, LLC
223 Rosecrans Avenue
Gardena, CA  90248

Brian K. Brookey
Tucker Ellis LLP
515 S. Flower St., 42nd Fl.
Los Angeles, CA  90071

Bridges Filter Svc Inc.
491 Atlas St.
Brea, CA  92821

Bright Mop Cleaning
5700 Carbon Canyon Rd. #86
Brea, CA  92823

CA Dept. Tax and Fee Admin
Account Info Group, MIC 29
P.O. Box 942879
Sacramento, CA  94279-7072

Ca Employ Dev Dept.
Bankruptcy Unit MIC-92E
P.O. Box 826880
Sacramento, CA  94280

CA Franchise Tax Board
Bankruptcy Section, MS A-340
P.O. Box 862880
Sacramento, CA  95812-2952

CA Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA  95812-2952

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

CA State Disbursement Unit
Casey Butler
P.O. Box 989067
West Sacramento, CA  95798-9067

California Assoc. Power, Inc.
2100 Montrose Ave. #628
Montrose, CA  91020

California Associated Power, Inc.
2100 Montrose Ave., #628
Montrose, CA  91020

California Choice Insurance
721 S. Parker Rd., Suite 200
Orange, CA  92868

Canon Financial Services, Inc.
14904 Collections Ctr Dr.
Chicago, IL  60693

Carel USA, Inc.
385 South Oak St.
Manheim, PA  17545

Carpenters Union Local 562
341 E. Wardlow Rd.
Long Beach, CA  90807

Carpenters Union Local 661
15881 Valley View Court
Sylmar, CA  91342

Carpenters Union Local 714
7111 Firestone Blvd., Suite 122
Buena Park, CA  90621

Carpenters Union Local 721
10015 Rose Hills Rd., #100
Whittier, CA  90601

Carpenters Union Local 951
3250 E. Shelby St.
Ontario, CA  91764

Case Parts Company
877 Monterey Pass Rd.
Monterey Park, CA  91754

Chase Auto - Truck 120 - 4708
P.O. Box 78232
Phoenix, AZ  85062-8232

Chino Glass
5265 Bell Ct.
Chino, CA  91710

Classic Refrigeration SoCal, Inc.
1450 East Walnut Avenue, Unit A
Fullerton, CA  92831

Compressor Parts Repair (CPR)
1501 Peck Rd.
Fullerton, CA  92831

Crainco, Inc.
P.O. Box 3008
Whittier, CA  90605

Cree Lighting
P.O. Box 7410381
Chicago, IL  60674-0318

Cresco Manuf. Inc.
1614 Orangethorpe Way
Anaheim, CA  92801-1227

Direct Refrigeration Sales LLC (DRS
6065 Parkway North Dr.
Suite 500
Cumming, GA  30040

El Dorado Parts
4290 El Dorado St.
Riverside, CA  92501

Emerson Climate Tech Inc.
P.O. Box 730020
Dallas, TX  75373

Emerson Digital Cold Chain
21263 Network Place
Chicago, IL  60673-1212

Encore Lighting
2125 S. Hellman Ave., Suite E
Ontario, CA  91761

Energy Control Technologies
10220 W. State Rd 84, Suite 9
Fort Lauderdale, FL  33324

Entelwise Fled Management
333 Cit Blvd., Suite 905
Orange, CA  92868-2903

Enterprise Fleet Mgmt
333 City Blvd., Suite 905
Orange, CA  92868

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Enterprise Rental Car
P.O. Box 800089
Kansas City, MO  64180

Evac North America Inc.
1445 Huntwood Dr.
Cherry Valley, IL  61016

Excel Answering Service
P.O. Box 102797
Pasadena, CA  91189

Ford Credit
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 102 - 9757
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 103 - 9795
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 104 -7601
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 106 - 9880
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 107 - 2067
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 110 - 0862
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 111 - 9777
P.O. Box 552679
Detroit, MI  48266-2679

Ford Credit - Truck 112 - 1813
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 113 - 1508
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 114 - 0769
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 115 - 0714
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 121 - 4344
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 134 - 0028
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 139 - 4123
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 145 - 3158
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 146 - 2760
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 161 - 0500
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 162 - 0469
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 164 - 9378
P.O. Box 552679
Detroit, MI  48255-2679

Ford Credit - Truck 165 - 3515
P.O. Box 552679
Detroit, MI  48255-2679

Franchise Tax Board
Bankruptcy Section MS A340
Sacramento, CA  95812-2952

Frank Door Company
P.O. Box 1720
Newport, NC  28570-1720

Fuses Unlimited
9248 Eton Avenue
Chatsworth, CA  91311

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Fuses Unlimited
9248 Eton Ave, Chatsworth
Chatsworth, CA  91311

Ganahl Lumber
1220 E. Ball Rd.
Anaheim, CA  92805

Ganahl Lumber
1220 E. Ball Road
Anaheim, CA  92805

Georgia Dept. of Revenue
1800 Century Blvd. NE
Atlanta, GA  30345

Ghassemian Law Group, APC
Attn:  Mahyar Ghassemian
27405 Puerta Real, Suite 250
Mission Viejo, CA  92691

Gil Hopenstand
312 N. Spring St., 5th Fl
Los Angeles, CA  90012-4701

Gilbert & Sackman
c/o Laurie A. Traktman
3699 Wilshire Blvd., Suite 1200
Los Angeles, CA  90010-2732

Gileno Distribution Services
7130 Sycamore Canyon Blvd.,
Suite A
Riverside, CA  92508

Grainger
570 S. Alameda St.
Los Angeles, CA  90013

Grainger
570 S Alameda St.
Los Angeles, CA  90013

Harbor Freight Tools
6020 Lankershim Blvd.
North Hollywood, CA  91606

Hawaii Dept. of Taxation
P.O. Box 259
Honolulu, HI  96809-0259

HCR Incorporated
Jamison Door Co.
P.O. Box 1274
Hagerstown, MD  21741

Heatcraft Refrigeration
Products LL
P.O. Box 4346
Dept. #895
Houston, TX  77210-4346

Hill Phoenix, Inc.
2016 Gees Mill Rd.
Conyers, GA  30013

Hoffman Legal Corp.
Attn:  Paul Hoffman
27405 Puerta Real, Suite 250
Mission Viejo, CA  92691

Home Depot
2455 Paces Ferry Road
Atlanta, GA  30339

Home Depot
2455 Paces Ferry Rd.
Atlanta, GA  30339

HTPG Heat Transfer Products
Group
29946 Network Place
Chicago, IL  60673

Hussmann
26372 Network Place
Chicago, IL  60673

Hydraulic Cranes
10805 S. Painter Ave.
Santa Fe Springs, CA  90670

Imperial Brown
198 SE 223rd Ave
Gresham, OR  97030

Imperial Brown
198 SE 223rd Avenue
Gresham, OR  97030

Inland Refrigeration & Air
Conditioning Trust Funds
c/o So. CA Pipe Trades Admin
Corp
501 Shatto Pl. 5th Fl.
Los Angeles, CA  90020

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Jamison Door Company
55 Jv Jamison Dr.
Hagerstown, MD  21740

Jamison Door Company
55 Jv Jamison Drive
Hagerstown, MD  21740

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Jared Glicksman
The Yocca Law Firm
19900 MacArthur Blvd., Suite
650
Irvine, CA  92612

Jason Torf
Tucker Ellis LLP
233 S. Wacker Dr., Suite 6950
Chicago, IL  60606

JPMorgan Chase Bank, NA
Bankruptcy Mail Intake Team
700 Kansas Lane Floor 01
Monroe, LA  71203-4774

Keep Supply
3045 E Chestnut Expy, Suite A
Springfield, MO  65802

Kysor Warren
P.O. Box 734824
Dallas, TX  75373-4824

Laura K. Hong
Tucker Ellis LLP
950 Main Ave., Suite 1100
Cleveland, OH  44113

Lawyers for Employee and
Consumer
Attn: D. Sorenson and L.
Osterman
4100 W. Alameda Ave., Third
Floor

Leser LLC
P.O. Box 7768
Charlotte, NC  28241

Linde Gas & Equipment Inc.
Dept LA 21511
Pasadena, CA  91185-1511

Mahyar Ghassemian Law
Group, APC
27405 Puerta Real, Suite 250
Mission Viejo, CA  92691

Many Circuit Breakers
7904 Ronson Rd, Suite A
San Diego, CA  92111

Market Fixtures Unlimited Inc.
13235 Woodruff Ave.
Downey, CA  90242

McMillan Water Treatment
P.O. Box 1539
Fontana, CA  92334

Metaresolve, Inc.
466 Foothill Blvd., Suite 104
La Canada Flintridge, CA
91011

Microsoft Corp.
60 E. Rio Salado Pkwy #1200
Tempe, AZ  85281-9513

Motion Industries
1605 Alton Rd.
Birmingham, AL  35210

Nevada Dept. of Taxation
700 E. Warm Springs Rd., 2nd
Fl.
Las Vegas, NV  89119

North Star Refrigerator Co, Inc.
11400 Ilex Ave.
San Fernando, CA  91340

Office of the U.S. Attorney
300 N. Los Angeles St., #516
Los Angeles, CA  90012-3341

Office of the U.S. Trustee
411 W. Fourth St., Suite 7160
Santa Ana, CA  92701-4593

Orange Co. Treasurer-Tax
Collector
CP.O. Box 4515
Santa Ana, CA  92702-4515

Parker Hannifin Canada LBX
#1592
P.O. Box 95000
Philadelphia, PA  19195-0001

Parker Hannifin Corp.
7376 Collection Ctr. Dr.
Chicago, IL  60693

Parts Town
1200 Greenbriar Dr.
Addison, IL  60101

Paul A. Hoffman
Hoffman Legal Corp.
27405 Puerta Realm, Suite 270
Mission Viejo, CA  92691

Paul Bennett Partnership, Inc.
17915 Ventura Blvd., Suite 228
Encino, CA  91316

PDQ Rentals
10826 Shoemaker Ave.
Santa Fe Springs, CA  90670

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Pride Manufacturing, Inc.
590 W Lambert Rd.
Brea, CA  92821

Prudential Overall Supply
P.O. Box 11201
Santa Ana, CA  92711-1210

Quench USA, Inc.
P.O. Box 735777
Dallas, TX  75373-5777


Rapid Recovery
1100 Haskins Rd.
Bowling Green, OH  43402

Refrigeration Hardware
Supply Corp (RHS)
Attn:  Juanita
632 Foresight Circle
Grand Junction, CO  81505

Refrigeration Hardware Supply
Corp.
Supply Corp (RHS)
632 Foresight Circle
Grand Junction, CO  81505

Refrigeration Supply Dist (RSD)
26021 Atlantic Ocean Dr.
Lake Forest, CA  92630

Refrigeration Supply Distributor
26021 Atlantic Ocean Dr.
Lake Forest, CA  92630

Rhino Mechanical, Inc.
1638-A West 9th St.
Upland, CA  91786


Robert S. Goe, Trustee
18101 Von Karman Ave., Suite
1200
Irvine, CA  92612

Royal Industrial Solutions
P.O. Box 847124
Los Angeles, CA  90084-7124

Russell Sigler, Inc.
P.O. Box 749472
Los Angeles, CA  90074-9472


Santa Ana Division
411 West Fourth St., Suite 2030
Santa Ana, CA  92701-4500

Senneca Holdings
P.O. Box 772881
Chicago, IL  60677-2881

Sentry Insurance
P.O. Box 8048
Stevens Point, WI  54481-8040


Service Channel
6200 Stoneridge Mall Road,
Suite 45
Pleasanton, CA  94588

Service Channel
6200 Stoneridge Mall Road
Pleasanton, CA  94588

Shaw APL SoCal LLC
P.o. Box 83066
Portland, OR  97283


Shaw APL SoCal LLC
P.O. Box 61612
Vancouver, WA  98666

So. CA Pipe Trades Admin
Corp.
533 S. Fremont Ave.
Los Angeles, CA  90071

So. Cal. Edison Co. (SCE)
P.O. Box 300
Rosemead, CA  91772-0002


Solutions Group Marketing &
Svc
24835 East La Palma Ave, Ste E
Yorba Linda, CA  92887

Source Graphics
1530 N. Harmony Circle
Anaheim, CA  92807

Southern California Pipe
Trades Admin
501 Shatto Pl., Suite 500
Los Angeles, CA  90020-1730


Southwest Carpenters Admin
Corp
555 S. Fremont Ave.
Los Angeles, CA  90071

Southwest Carpenters Admin
Corp
533 S. Fremont Ave., 10th
Floor
Los Angeles, CA  90071

Sun Pacific Storage Containers
Inc.
31 Rancho Circle
Lake Forest, CA  92630

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Surge Inc. (C110253)
23811 Washington Blvd.
Murrieta, CA  92562

SVF Walnut
c/o American Realty Advisors
Attn: Stanley L. Iezman
515 S. Flower St., 49th Fl
Los Angeles, CA  90071

SVF Walnut Avenue
c/o American Realty Advisors
Attn: Stanley L. Iezman
515 S. Flower St., 49th Fl.
Los Angeles, CA  90071

Thermoseal
P.O. Box 775239
Irving, TX  75061

Toyota Industries Commercial
Finance, Inc.
P.O. Box 660926
Dallas, TX  75266-0926

Trane US Inc.
15551 Red Hill Ave., Suite C
Tustin, CA  92780

Turnkey Industrial Pipe &
Supply, I
13249 Barton Circle
Whittier, CA  90605

UA Local 250
Finance Dept.
Josie Diaz De Leon
18355 S. Figueroa
Gardena, CA  90248-4217

United Assoc Plumbers &
Steamfitter
Local 230
6313 Nancy Ridge Dr.
San Diego, CA  92121

United Assoc. Natl Pension
Fund
P.O. Box 79972
Baltimore, MD  21279-0972

United Refrigeration, Inc.
11401 Roosevelt Blvd.
Philadelphia, PA  19154

United Rentals
P.O. Box 051122
Los Angeles, CA  90074-1122

URI
P.O. Box 677036
Dallas, TX  75267-7036

US Small Business Admin
Attn:  District Counsel
312 N. Spring St., 5th Fl.
Los Angeles, CA  90012

Verizon
P.O. Box 660108
Dallas, TX  75266-0108

Verizon - Classic
P.O. Box 660108
Dallas, TX  75266-0108

Verizon - Connect
P.O. Box 15043
Albany, NY  12212

Verizon Wireless - 909
P.O. Box 660108
Dallas, TX  75266-0108

Walsh, Erin
9619 Lido Ct.
Desert Hot Springs, CA  92240

Water One Industries, Inc.
5410 Gateway Plaza Dr.
Benicia, CA  94510

Wells Fargo
P.O. Box 51963
Los Angeles, CA  90051

Wells Fargo - Truck 109 - 3492
P.O. Box 51963
Los Angeles, CA  90051-6262

Wells Fargo - Truck 116 - 6210
P.O. Box 51963
Los Angeles, CA  90051-6263

Wells Fargo - Truck 118 - 6194
P.O. Box 51963
Los Angeles, CA  90051-6263

Wells Fargo - Truck 119 - 2736
P.O. Box 51963
Los Angeles, CA  90051-6263

Wells Fargo Bank dba Wells
Fargo Auto
P.O. Box 130000
Raleigh, NC  27605

WEX Enterprise Exxon Mobile
Card
P.O. Box 4337
Carol Stream, IL  60197-4337

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Windy City Wire
29066 Network Place
Chicago, IL  60673-1290

Wrights Supply Inc.
640 Allen Ave.
Glendale, CA  91201

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.